In the Matter of the Estate of SAMUEL DEXTER BRADFORD, THIRD, Deceased.

Surrogate's Court, Kings County, May 14, 1936.

*Evarts, Choate, Curtin & Leon* [*John J. Curtin* and *Jacob Rosenberg* of counsel], for the applicant, Thelma Cooper, appointee under decedent's will. *Jacob Rosenberg* is also appointee and associated himself with applicant.

*Spencer, Ordway & Wierum* [*John A. McManus* of counsel], for Percy Lee Atherton, respondent, appointee under decedent's will.

*Iselin, Riggs & Ferris*, for the Central Hanover Bank and Trust Company and Francis H. Kinnicutt, as substituted testamentary trustees, etc., of Samuel D. Bradford, Second, and Samuel Dexter Bradford, Third.

WINGATE, S. The present application to compel substituted testamentary trustees, appointed by the Probate Court of Norfolk county, Mass., to distribute the remainder of a trust in their hands pursuant to a direction contained in the will of a resident donee of a power of appointment thereof, presents a number of interesting and novel questions of jurisdiction, the full import of which appear to be imperfectly appreciated even by the parties themselves.

The facts are not in dispute. Whereas certain features of the relevant circumstances are not contained in the formal record, they were conceded on the argument and are referred to in the briefs of the parties, wherefore the court feels at liberty to review them for the purpose of accurately depicting the situation surrounding the parties.

Samuel Dexter Bradford, the First, hereinafter designated as the " grandfather," died on December 18, 1865, a resident of West Roxbury, Norfolk county, Mass. By his will, which was admitted to probate by the Probate Court of Norfolk county, Mass., on January 13, 1866, he erected a trust of one-half of his residuary estate for the life benefit of his son, Samuel Dexter Bradford, Second, hereinafter designated the " father," with a testamentary power of appointment in the latter.

Samuel Dexter Bradford, Second, died on January 12, 1873, a resident of Newport, R. I., leaving a will which was duly admitted to probate on February 2, 1878, by the Probate Court of the county of Norfolk, Mass., by the terms of which, so far as here material, he purported expressly to exercise the power of appointment granted by the will of the " grandfather " and to erect a trust for the life benefit of his son, Samuel Dexter Bradford, Third, hereinafter designated as the " son," with testamentary power of appointment over the principal.

It may be observed parenthetically that the obvious inference from the acceptance of jurisdiction by the Massachusetts court of

the administration of the estate of the father, who was a domiciled resident of Rhode Island, was because of the situs in Massachusetts of the trust for the life benefit of the father under the will of the grandfather, and because of the fact that provisions of the will of the former made disposition thereof.

The will of the " father " appointed his wife, Rebecca, Paschal W. Turney and Henry Hobart Porter as executors and as trustees of the trust. At some undisclosed time the Massachusetts court appointed Central Hanover Bank and Trust Company, which has a place of business in the county of New York, but none in the county of Kings, and Francis H. Kinnicutt, who resides in the State of New Jersey, as substituted trustees.

Samuel Dexter Bradford, Third, died a resident of Kings county, N. Y., on May 18, 1935, leaving a will which was probated in this court on December 31, 1935, whereby he purported to exercise the power of appointment to the extent of $35,000 in favor of the petitioners in this proceeding, and the balance for the benefit of Percy Lee Atherton, described in the will as of Boston, Mass., who is joined as a respondent.

The relief which is sought is a direction by this court to the substituted trustees to make payment to the petitioners in this jurisdiction of the sums appointed. The propriety of such an act by this court is earnestly contested both by the trustees and the appointee of the remainder.

The syllogism for relief which is advanced by the petitioners may be summarized to the following effect: The trustees in New York State are the legal owners of the trust property; the petitioners are equitably entitled thereto; equitable relief *in personam* is possible in the courts of New York State against the trustees; the Surrogate's Court is a court of equitable jurisdiction; hardship to the petitioners will result if relief in New York State be not accorded; therefore, the Surrogate's Court of Kings county should grant the relief.

The petitioners cite various authorities which they contend, and their opponents deny, are apt precedents for the establishment of the various premises of their syllogism; all, however, apparently overlook the fact that one important link in the chain of argument is wholly lacking. Even though all of the stated premises be argumentatively admitted, the conclusion is a *non sequitur* unless it be further established that the Surrogate's Court of Kings county has jurisdiction of the particular controversy.

In view of the modern multiplication of particular precedents, there is an inevitable tendency to overlook the basic principles of which individual decisions are but especial applications.

The function of Surrogates' Courts in general is to effectuate and regulate the devolution of the property of decedents. Their jurisdiction is primarily and essentially *in rem* in respect to property which the incident of death has temporarily left without an adjudicated owner, and in so far as jurisdiction *in personam* is properly exercised, it is primarily merely by reason of the relationship, rights, claims or property obligations of the particular persons, in respect to whom the jurisdiction is entertained, in the *rem* which is the basic subject-matter of the dispositive power of such courts. If this underlying conception be borne in mind, much of the prevailing misconception respecting the authority of the surrogate will be dispelled. The court has not, and informed opinion has never claimed for it, any basic power or authority to regulate any controversy which is merely personal between one individual and another which does not have for its object a determination of the recipients of a part of, or an interest in, the assets of a deceased person. In respect to such controversies, however, the Surrogate's Court as a whole has been invested with wide and ever-broadening powers to the end that concentration of jurisdiction to determine all controversies relating to the property of a deceased person may be determined before this single tribunal without the necessity for resort to another forum. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72.) In respect to the limited scope of its authority it has all powers, legal and equitable, which any court in any common-law jurisdiction has ever possessed.

Assuming that the present controversy relates to some right in a decedent's property so that some surrogate or court of probate has potential power of adjudication, the question as to which particular court of this type has jurisdiction becomes solely one of the location of the *rem* in respect to which the controversy relates. With real and possibly tangible personal property having a permanent situs, the question of jurisdiction is obviously determinable on principles of primary power to enforce its decrees upon the *rem* itself. As to intangibles owned by a decedent, solution is found in the universally accepted formula, *mobilia sequitur personam*, by which their situs is usually attributed to the domicile of the owner. (*Moultrie* v. *Hunt*, 23 N. Y. 394, 396, 403; *Peterson* v. *Chemical Bank*, 32 id. 21, 24, 43; *Graham* v. *First National Bank of Norfolk*, 84 id. 393, 399; *Matter of Sherman*, 153 id. 1, 3, *Ennis* v. *Smith*, 14 How. [U. S.] 400, 424; *Matter of Killough*, 148 Misc. 73, 85.)

Whereas these basic conceptions have received most frequent enforcement in controversies respecting the respective jurisdictional authorities of different States, they are equally applicable to similar questions in which the comparative rights of subdivisions of such

States are involved, and are controlling on the propriety of acceptance of jurisdiction by a particular Surrogate's Court. Not only is this wholly patent on legal theory, but it has been made the subject of express enactment. (Surr. Ct. Act, §§ 45, 46.)

It follows that the sole remaining question is as to whether the present controversy relates to the estate of a decedent, any item of property of which is located within the county of Kings. It is not contended that any tangible property of either the grandfather or father was here located. Even if the theory of the petitioner be accepted that the trust property is so vested in the trustees as to permit a court of equity of this State to direct their acts in respect to it, yet neither of the trustees is a resident of this county, or has a place for the transaction of business here, wherefore, this county may not be considered as the situs of any intangible property by reason of its imputation to the holder of the legal title.

The only matter in any manner connecting this county with the entire affair is that one of its residents was vested with a power of appointment. Such a power, however, is not a property interest. (*Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290, 295; *Matter of N. Y. Life Insurance & Trust Co.*, 139 N. Y. Supp. 695, 704, not otherwise reported; affd., 157 App. Div. 916; affd., 209 N. Y. 585; *Hirsch* v. *Bucki*, 162 App. Div. 659, 671; *Matter of Terwilligar*, 142 Misc. 249, 252.) The donee is merely a limited agent for the purpose " of filling in the substantial blank left in the will of the donor of the power with the name of the remainderman desired by the donee." (*Matter of Leeds*, 154 Misc. 228, 231.) The act, when validly performed, results in the appointed property passing to the nominee direct from the estate of the donor of the power. (*Matter of Stewart*, 131 N. Y. 274, 281; *Matter of Harbeck*, 161 id. 211, 218.) It follows that this power furnishes no *res* upon which the jurisdiction of this court can attach and that with its elimination all possibilities in this direction have disappeared.

The court expressly refrains from the expression of any opinion as to the existence of jurisdiction in any other Surrogate's Court or court of general jurisdiction in the State of New York to pass upon this controversy. Its only determination is that the Surrogate's Court of the county of Kings possesses no authority for this purpose.

Enter decree on notice in conformity herewith.